Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2026 08:09 AM CDT

Jimmy Swanson, appellee, v. Scott Swanson
and Pamela Swanson, appellants.

___ N.W.3d ___

Filed August 11, 2026.    No. A-25-510.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews
the district court's grant of summary judgment de novo, viewing the
record in the light most favorable to the nonmoving party and drawing
all reasonable inferences in that party's favor.

2. \_\_\_\_: \_\_\_\_. An appellate court will affirm a lower court's grant of sum-
mary judgment if the pleadings and admitted evidence show that there is
no genuine issue as to any material facts or as to the ultimate inferences
that may be drawn from those facts and that the moving party is entitled
to judgment as a matter of law.

3. **Limitations of Actions: Appeal and Error.** The point at which a statute
of limitations begins to run must be determined from the facts of each
case, and the decision of the trial court on the issue of the statute of
limitations normally will not be set aside by an appellate court unless
clearly wrong.

4. **Summary Judgment.** Summary judgment is proper only when the
pleadings, depositions, admissions, stipulations, and affidavits in
the record disclose that there is no genuine issue as to any material fact
or as to the ultimate inferences that may be drawn from those facts and
that the moving party is entitled to judgment as a matter of law.

5. **Summary Judgment: Proof.** The party moving for summary judgment
must make a prima facie case by producing enough evidence to show
the movant would be entitled to judgment if the evidence were uncon-
troverted at trial. If the moving party makes a prima facie case, the bur-
den shifts to the nonmovant to produce evidence showing the existence
of a material issue of fact that prevents judgment as a matter of law.

6. **Contracts: Real Estate: Intent.** There are generally three requirements
for a covenant, whether affirmative or negative, to run with the land:
(1) The grantor and the grantee must have intended that the covenant

run with the land, as determined from the instruments of record; (2) the covenant must touch and concern the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate.

7. **Contracts: Real Estate.** The touch and concern requirement of a real covenant is met when the covenant affects the legal relations—the advantages and the burdens—of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land. The covenant must impose, on the one hand, a burden upon an interest in land, which on the other hand increases the value of a different interest in the same or related land.

8. **Conversion: Words and Phrases.** Conversion is any unauthorized or wrongful act of dominion exerted over another's property that deprives the owner of his or her property permanently or for an indefinite period of time.

9. **Torts: Intent: Proof.** One of the basic elements of tortious interference with a business relationship is an intentional act which induces or causes a breach or termination of the relationship.

10. **Limitations of Actions.** Generally, a cause of action accrues and the period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit.

11. **Actions: Contracts: Time.** A cause of action in contract accrues at the time of breach or the failure to do the thing agreed to.

Appeal from the District Court for Knox County: JAMES G. KUBE, Judge. Reversed and vacated, and cause remanded for further proceedings.

Christian D. Rush and Gretchen L. McGill, of Dvorak Law Group, L.L.C., for appellants.

Hanna Knox Jensen, Knox County Attorney, for appellee.

RIEDMANN, Chief Judge, and WELCH and FREEMAN, Judges.

FREEMAN, Judge.

## I. INTRODUCTION

Scott Swanson and Pamela Swanson appeal the order entered by the district court for Knox County granting Jimmy

Swanson's motion for summary judgment for his claims of breach of contract, conversion, and tortious interference. Scott and Pamela argue that there was no enforceable agreement between them and Jimmy. For the reasons explained below, we reverse and vacate, and remand for further proceedings.

## II. BACKGROUND

Jimmy is the brother-in-law of Katherine Swanson (Kim). In September 2015, Jimmy and Kim entered into a real estate agreement (side agreement) where Jimmy would convey property in Knox County to Kim by warranty deed. Included in the side agreement were the following provisions:

> 2. Upon execution of this Agreement, Jimmy shall execute a warranty deed to Kim conveying all his right, title and interests in the Property, subject to his right to receive one-half of the net sale proceeds if Kim sells or transfers the Property for valuable consideration during Jimmy's lifetime and Kim is unable to obtain a flowage easement . . . .
>
> . . . .
>
> 5. In the event Kim successfully obtains an offer or settlement for reasonable compensation or obtains judgment or other final award from the Government for a flowage easement, Kim shall accept such offer or judgment or award and the net proceeds therefrom shall be split and paid 50 percent to Kim and 50 percent to Jimmy. Upon receipt of one-half of the flowage easement net proceeds, Jimmy's right to one-half of the sale proceeds from the sale of the Property terminates.
>
> 6. Time is of the essence in the performance of this Agreement.
>
> . . . .
>
> 12. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

The warranty deed conveying the property from Jimmy to Kim was executed in November. Kim did not obtain a flowage easement, so the provision regarding a flowage easement will not be discussed further.

In December 2016, Kim conveyed the Knox County property to her son, Scott, and his wife, Pamela, by a joint tenancy warranty deed. Scott and Pamela did not dispute in the trial court that the transaction was a gift for no valuable consideration.

On April 1, 2021, Scott and Pamela accepted an offer for $350,000 from Allen and Amy Walton to purchase property that included the Knox County property. On May 5, Scott and Pamela conveyed the Knox County property to the Waltons by warranty deed.

In March 2023, Jimmy filed a complaint for conversion and civil conspiracy against Kim and Scott. In November, Jimmy amended his complaint to include breach of contract and tortious interference claims and added Pamela as a defendant. Pursuant to the side agreement, he argued that he was entitled to one-half of the proceeds, or $198,875, Scott and Pamela received from the sale to the Waltons.

The district court granted the defendants—Kim, Scott, and Pamela—leave to amend their answers. In the amended answers, the defendants asserted that Jimmy's claims were barred by the statute of limitations.

In July 2024, the defendants moved for summary judgment. In October, the district court sustained Kim's motion in its entirety and found that Scott and Pamela were entitled to summary judgment on the civil conspiracy claim. It also found that the agreement between Kim and Jimmy was unambiguous. Furthermore, the district court determined that Jimmy's claims were not barred by the statute of limitations because the date of accrual was when Scott and Pamela, as Kim's assignees, sold the Knox County property to the Waltons for valuable consideration in May 2021, not when Kim gifted the property to Scott and Pamela in December 2016.

The district court overruled Scott and Pamela's motion for summary judgment regarding the conversion and breach of contract claims because they were bound to the side agreement, which was a real covenant that ran with the land. Additionally, the district court overruled Scott and Pamela's motion for summary judgment regarding tortious interference because there was an issue of fact regarding Scott's awareness of the side agreement.

In March 2025, Jimmy moved for summary judgment on the remaining claims of conversion, breach of contract, and tortious interference against Scott and Pamela. The district court ruled in favor of Jimmy on all three claims, finding that he was entitled to a judgment of $175,000 from Scott and Pamela, plus prejudgment and postjudgment interest. Additionally, the district court granted Jimmy's motion to tax costs against Scott and Pamela in the amount of $905.64.

Scott and Pamela appeal.

## III. ASSIGNMENTS OF ERROR

Scott and Pamela assign, restated and restructured, that the district court erred in finding that they (1) breached the side agreement, (2) were liable for conversion, and (3) tortiously interfered with the side agreement. Additionally, they assign that the district court erred in finding that (4) Jimmy's claims were not barred by the statute of limitations.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *U.S. Specialty Ins. Co. v. D S Avionics*, 320 Neb. 287, 26 N.W.3d 761 (2025). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and

that the moving party is entitled to judgment as a matter of law. *Id.*

[3] The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the trial court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Sebade v. Sebade*, 320 Neb. 398, 28 N.W.3d 19 (2025).

## V. ANALYSIS

Before addressing the assignments on appeal, we set out the legal framework for evaluating a summary judgment.

[4,5] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Ricker v. Nebraska Methodist Health Sys.*, 319 Neb. 628, 24 N.W.3d 344 (2025). The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.*

Neither party disputes the factual circumstances of this case. Therefore, we focus our attention on whether the undisputed facts in this record support the district court's judgment as a matter of law.

### 1. BREACH OF SIDE AGREEMENT

Scott and Pamela argue that the district court erred in finding that they breached the side agreement. They argue that the side agreement could not be enforced against them because they were not parties to the side agreement and that the side agreement was not a real covenant. Before addressing their

argument, we set out the legal framework for determining real covenants.

### (a) Real Covenant Law

The difference between an analysis based in real covenant law and one based in contract law is that contracts concern primarily personal rights and duties, while real covenants concern rights that run with property. *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021). Whereas personal contract rights are not binding on successors in interest, real covenants can be. *Id.*

[6] Under the modern rule, there are generally three requirements for a covenant, whether affirmative or negative, to run with the land: (1) The grantor and the grantee must have intended that the covenant run with the land, as determined from the instruments of record; (2) the covenant must touch and concern the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate. *Id.* Scott and Pamela do not contest that they are likely in privity of estate with Jimmy as successive owners of the property. However, they contend that Jimmy and Kim did not intend for the side agreement to run with the land and that the side agreement does not touch and concern the land. We will begin our analysis with whether the side agreement touched and concerned the land.

[7] For a real covenant to run with the land, the covenant must touch and concern the land with which it runs. See *Equestrian Ridge v. Equestrian Ridge Estates II, supra.* The touch and concern requirement of a real covenant is met when the covenant affects the legal relations—the advantages and the burdens—of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land. *Id.* The covenant must impose, on the one hand, a burden upon an interest in land, which on the other hand increases

the value of a different interest in the same or related land. *Id.*
Stated differently, "[i]n order to meet the requirement that a
covenant 'touch and concern' the land, the covenant must be so
related to the land as to enhance its value and confer a benefit
upon it or, conversely, impose a burden on it." 20 Am. Jur. 2d
*Covenants, Etc.* § 24 at 601 (2015).

Much of Nebraska's real covenant case law is limited to
situations involving homeowners' associations. See *Pine Tree
Neighborhood Assn. v. Moses*, 314 Neb. 445, 990 N.W.2d
884 (2023); *Equestrian Ridge v. Equestrian Ridge Estates II,
supra*; *Regency Homes Assn. v. Egermayer*, 243 Neb. 286,
498 N.W.2d 783 (1993). The Nebraska Supreme Court relied
on other jurisdictions, such as New York, when developing its
legal framework for real covenants. See *Regency Homes Assn.
v. Egermayer, supra.* In New York, experts have described the
touch and concern requirement as follows:

> [I]f the thing covenanted to be done is merely collateral to
> the land or estate conveyed, and does not touch and con-
> cern it, or affect the quality, value, use or enjoyment of
> such land or estate, a covenant merely relating to the land
> is to be considered as a personal covenant which does not
> run with the land.

1 Joseph Rasch, New York Law and Practice of Real Property
§ 19.6 at 432 (2d ed.) (Cum. Supp. 2026).

Further, in *Village of Philadelphia v. FortisUS Energy
Corp.*, 48 A.D.3d 1193, 851 N.Y.S.2d 780 (2008), the New
York Supreme Court, Appellate Division, considered an
agreement for the payment of certain sums and designating
the obligations as binding on successors and assigns. By way
of background, the owner of land sold the property to a cor-
poration for the construction and operation of a hydroelectric
project. See *id.* The contract documents required certain pay-
ments be made, including upon project completion. See *id.*
The project was never completed, and the property was trans-
ferred to a third-party corporation. See *id.* The third-party
corporation refused to be bound by the payment provision

and argued the agreement did not run with the land because it did not touch and concern it. See *id.* The New York court agreed, explaining:

> "[A] covenant to pay a sum of money is a personal affirmative covenant which usually does not concern or touch the land" . . . . There was no restriction on the use of the property . . . but, rather, there was only a requirement that the owner of the property pay an annual amount to plaintiff for 50 years.

*Village of Philadelphia v. FortisUS Energy Corp.*, 48 A.D.3d at 1195, 851 N.Y.S.2d at 783 (citations omitted).

Likewise, here, the agreement required payment to Jimmy based on a future event, namely the sale or transfer of the designated land for valuable consideration, but there is no actual benefit or detriment to the interest in the land itself. In other words, the transaction was collateral to the land and does not affect its quality, value, use, or enjoyment. While the district court determined that the side agreement touched and concerned the land because it benefited the seller of the land, benefiting the seller is not the same as benefiting the land itself. As in *Village of Philadelphia v. FortisUs Energy Corp., supra*, the agreement to pay a sum of money did not concern or touch the land, and the district court erred in its finding.

All three factors must be met for an agreement to run with the land. See *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021). Because the requirement that the covenant must touch and concern the land with which it runs fails, the side agreement is not a real covenant that runs with the land. Therefore, the district court erred in finding that the side agreement was a real covenant that ran with the land.

### (b) Contract Law

Although we found that a real covenant does not exist, we reserve for another day whether Scott and Pamela were otherwise bound by the side agreement. Jimmy argues that

once Scott and Pamela accepted the gift from Kim, they "received the obligations of the [s]ide [a]greement as part of the transfer." Brief for appellee at 16. However, Jimmy cites no authority for this assertion. Furthermore, the district court did not address whether principles of contract law applied when it found, instead, that the side agreement was a real covenant binding Scott and Pamela to its terms. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003). An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Id.* Accordingly, we do not address whether the principles of contract law apply to a breach of the side agreement.

## 2. ADDITIONAL CLAIMS

Scott and Pamela also argue that the district court erred in finding them liable for Jimmy's claims of conversion and tortious interference.

[8] Conversion is any unauthorized or wrongful act of dominion exerted over another's property that deprives the owner of his or her property permanently or for an indefinite period of time. *Perkins v. RMR Building Group*, 320 Neb. 707, 30 N.W.3d 148 (2026). The district court relied on its reasoning that the side agreement was a real covenant that ran with the land in determining that Scott and Pamela were liable on Jimmy's claim for conversion. However, as previously discussed, the district court erred in its finding that the side agreement was a real covenant. Accordingly, Jimmy did not have an immediate right to the proceeds Scott or Pamela received from the sale of the property, and Scott and Pamela were not in wrongful possession of the proceeds from its sale.

In *Green Plains Trade Group v. Archer Daniels Midland Co.*, 320 Neb. 882, 31 N.W.3d 577 (2026), the Nebraska Supreme Court recognized a claim for tortious interference

under the Restatement (Second) of Torts § 766 at 7 (1979), which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

[9] One of the basic elements of tortious interference is "'an intentional act which induces or causes a breach or termination of the relationship.'" *Green Plains Trade Group v. Archer Daniels Midland Co.*, 320 Neb. at 888, 31 N.W.3d at 582 (quoting *Pettit v. Paxton*, 255 Neb. 279, 583 N.W.2d 604 (1998)). Here, the district court discussed that the interference would have occurred with the contract between Kim and Jimmy. However, the district court found that Kim did not breach the contract with Jimmy when she transferred the Knox County property to Scott and Pamela, as there was nothing in the agreement preventing her from doing so. And neither party contests this finding of the district court. Consequently, Jimmy cannot show tortious interference as a matter of law.

Therefore, the district court erred in finding Scott and Pamela liable for conversion and tortious interference.

## 3. Statute of Limitations

Scott and Pamela argue that Jimmy's claims are barred by the statute of limitations because the statute of limitations began to run when Kim transferred the Knox County property to Scott and Pamela in 2016. However, the district court found the 2016 transfer was a gift and not a transfer of the property for valuable consideration. Instead, it determined that Jimmy's claims became actionable when Scott and Pamela sold the property to the Waltons for valuable consideration in 2021.

Because we have determined that the district court's order granting summary judgment in favor of Jimmy was made in error, we need not address the assigned error regarding the statute of limitations. See *Sebade v. Sebade*, 320 Neb. 398, 28 N.W.3d 19 (2025) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it). However, an appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. See *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017). Because the issues raised in this appeal regarding the statute of limitations are likely to recur on remand, we take this opportunity to address the district court's decision.

[10,11] Pursuant to Neb. Rev. Stat. § 25-205(1) (Reissue 2016), "Except as provided in subsection (2) of this section, an action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment, can only be brought within five years." Claims for conversion and tortious interference can only be brought within four years. See Neb. Rev. Stat. § 25-207 (Reissue 2016). Generally, a cause of action accrues and the period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit. *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019). A cause of action in contract accrues at the time of breach or the failure to do the thing agreed to. *Id.*

As discussed, Kim did not breach the side agreement by transferring the Knox County property to Scott and Pamela in 2016. Jimmy would only receive funds if the property were transferred for valuable consideration. Scott and Pamela did not dispute in the trial court that the 2016 transaction was a gift for no valuable consideration. Therefore, the district court was not clearly wrong in determining that the statute of limitations did not begin to run in 2016, but, rather, it did so in

2021, because there was no underlying breach or transfer for valuable consideration.

## VI. CONCLUSION

We conclude that the district court erred in granting summary judgment in favor of Jimmy on his claims for breach of contract, conversion, and tortious interference.

We reverse the district court's order granting summary judgment in favor of Jimmy. We vacate the order finding that Scott and Pamela were liable for $175,000, plus prejudgment and postjudgment interest and the order granting Jimmy's motion to tax costs in the amount of $905.64. See *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 337, 701 N.W.2d 367 (2005) (order, judgment, or proceeding dependent on, or ancillary and accessory to, judgment, order, or decree that is reversed shares its fate and falls with it). We remand the cause for further proceedings.

Reversed and vacated, and cause remanded for further proceedings.